# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

MATTHEW KNECHT,

        Plaintiff,

    v.

ANDREI BALANESCU, et al.,

        Defendants.

CIVIL ACTION NO. 4:16-CV-00549

(MEHALCHICK, M.J.)

## MEMORANDUM

Before this Court are six motions for summary judgment in this trucking accident case; four filed by Plaintiff Matthew Knecht, one by Defendant Newburg Egg Corporation ("Newburg Egg"), and one by the remaining Defendants. While the motions raise a variety of issues, the question critical to resolving many of the motions is the employment relationship of Defendants Andrei Balanescu, Izzy Trucking, and Newburg Egg.

I. **BACKGROUND AND PROCEDURAL HISTORY**

On October 28, 2015, Plaintiff Matthew Knecht and Defendant Andrei Balanescu were both travelling west on I-80 near Turbot Township, PA. (Doc. 17, ¶ 14). Balanescu was operating a tractor-trailer, delivering a load to a customer of Newburg Egg, while Knecht drove his father's Ford Focus. The tractor was owned by Hudson Truck Leasing LLC, and leased to Izzy Trucking Inc. The trailer was owned by JILCO Equipment Leasing Co. Inc., and leased to Newburg Egg.

Many of the facts surrounding the accident remain in dispute. Knecht asserts that Balanescu's tractor-trailer struck him from behind, causing the accident that resulted in Knecht's severe injuries, necessary surgeries, and memory loss. (Doc. 17, ¶ 19). The

Defendants, citing the police report created by Trooper Edward Shannon, assert that Knecht passed Balanescu from the right hand lane, lost control of his vehicle, came to a rest perpendicular across the travel lanes, and was struck on the passenger side by Balanescu's truck when Balanescu could not stop in time to avoid the crash. (Doc. 60, ¶ 17-19; Doc. 60-6, at 5). On March 30, 2016, Knecht filed suit against Balanescu, Izzy Trucking, A&B Trucking of Queens Inc., Hudson Truck Leasing, and JILCO, amending his complaint on October 14, 2016 to include Newburg Egg. (Doc. 1; Doc. 17).

On September 1, 2017, Knecht filed his first motion for summary judgment, arguing that Balanescu should be considered an employee of Newburg Egg as a matter of law. (Doc. 53; Doc. 56). Knecht argues that the lease agreement between Newburg and JILCO for the trailer involved in the accident affirmatively states that only employees will transport the trailer in question. (Doc. 56, at 4). Knecht further argues that the level of control exhibited by Newburg establishes an employment relationship. (Doc. 56, at 4). Newburg responded that the lease agreement with a third party does not establish an employment relationship, and that Newburg merely provided the destination of its shipments but did not exert any control over Balanescu. (Doc. 114).

On September 7, 2017, Newburg filed a motion for summary judgment as well. In its motion, Newburg argues that Knecht has failed to produce evidence to support the contentions that Newburg: was involved in a joint venture; can be vicariously liable for Balanescu's actions; negligently hired, supervised, or retained Balanescu; negligently entrusted their equipment to him; or was reckless. (Doc. 57; Doc. 58). Knecht counters that there are genuine disputes of material fact on all of these contentions. (Doc. 77).

- 2 -

Next, the remaining Defendants[1] moved for summary judgment as well. (Doc. 59; Doc. 61). In their motion, these Defendants argue that: claims against Hudson Truck Leasing and JILCO should be dismissed under the Graves Amendment; claims for punitive damages should be dismissed, as there is no evidence of outrageous conduct or evil motive, and; claims against A&B Trucking of Queens should be dismissed. (Doc. 61, at 2). Knecht responds that JILCO negligently entrusted their trailer to Newburg, constituting an exception to the Graves Amendment, and that factual disputes remain on whether Izzy Trucking and Andrei Balanescu acted with reckless indifference. (Doc. 79, at 4). Knecht did not oppose the dismissal of claims against Hudson Truck Leasing and A&B Trucking. (Doc. 79, at 3).

Knecht then filed his second motion for summary judgment, arguing that as a matter of law Newburg Egg negligently hired, supervised, and retained Andrei Balanescu as a driver for its deliveries. (Doc. 62; Doc. 64). Newburg retorts that it is not a motor carrier, thus the cited provisions for Knecht's theory do not apply, nor is Balanescu an employee in any event. (Doc. 73).

The same day, Knecht also filed a motion for summary judgment, arguing that Izzy Trucking also negligently hired, supervised, and retained Andrei Balanescu. (Doc. 65; Doc. 67). Izzy Trucking does not challenge Balanescu's employment status, but argues genuine questions of material fact remain and thus preclude summary judgment at this stage. (Doc. 74).

---

[1] Andrei Balanescu, Izzy Trucking, A&B Trucking of Queens, Hudson Truck Leasing, and JILCO.

Lastly, Knecht moves for summary judgment on the issue of Israel Newman's employment. (Doc. 68; Doc. 70). Knecht argues that Newman, owner of Izzy Trucking, must also be considered an employee of Newburg Egg as a matter of law due to the exclusivity between Izzy Trucking and Newburg and because of Newburg's payment of Newman's fees and costs. Newburg responds that Izzy Trucking is entirely independent, was originally retained by Newburg through a non-party broker, and that the cost arrangement is fairly standard practice. (Doc. 72).

As the motions were fully briefed and presented at oral argument, they are now ripe for review.

## II. STANDARD OF REVIEW

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment should be granted only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A fact is "material" only if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is "genuine" only if the evidence "is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248. In deciding a summary judgment motion, all inferences "should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Pastore v. Bell Tel. Co. of Pa.*, 24 F.3d 508, 512 (3d Cir. 1994).

A federal court should grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 278 (3d Cir. 2000). In making this

determination, "a court must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994). The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, the court's function is not to make credibility determinations, weigh evidence, or draw inferences from the facts. *Anderson*, 477 U.S. at 249. Rather, the court must simply "determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

III. **DISCUSSION**

As evaluation of a majority of the motions is affected by the potential employer-employee relationship between Newburg Egg and Andrei Balanescu, the Court first addresses this issue.

A. THE TERMS OF THE LEASE AGREEMENT BETWEEN NEWBURG EGG AND JILCO EQUIPMENT LEASING CO., INC. DO NOT BY THEMSELVES CREATE AN EMPLOYMENT RELATIONSHIP BETWEEN NEWBURG EGG AND ANDREI BALANESCU

Knecht argues that Balanescu must be considered an employee of Newburg Egg pursuant to a lease agreement for the trailer Balanescu was towing at the time of the accident, entered into between Newburg and JILCO. (Doc. 56, at 4). Knecht argues that the agreement mandates that the operator of the leased equipment must be an employee. Under paragraph 14 of this lease agreement, Newburg Egg agreed that the "vehicle(s)" described in the equipment schedule between the two "shall be operated by safe, careful, and licensed drivers to be selected, employed, controlled, and paid by [Newburg]. [Newburg] agrees [] that said drivers are employees and agents of [Newburg] and not the employees and agents of JILCO . . ." (Doc. 56-

1, at 4). The subsequent equipment schedule lists one 2001 Great Dane over-the-road trailer, serial number 1GRAA96231B017983, which Knecht asserts is the same trailer involved in the accident. Thus, as driver of the "vehicle" identified in the equipment schedule, Balanescu is an employee per the express terms agreed upon by Newburg and JILCO. Newburg counters that the reliance on "boilerplate" language contained in the contract is misplaced, as there is no case law to support the finding of an employment relationship based on a lease agreement made with a third-party.

While the Court is mindful that one of the indisputable foundational principles of contract law is that parties should be held to the plain language of their freely agreed to contracts, nonetheless the terms of the lease agreement between Newburg and JILCO does not in-and-of-itself establish an employer-employee relationship between Newburg and Andrei Balanescu. "Although there is a substantial volume of law pertaining to a determination of employer-employee relationships, one rule remains inviolable: each case must be determined on its own facts." *Daily Exp., Inc. v. Workmen's Comp. Appeal Bd.*, 406 A.2d 600, 601 (Commw. Ct. Pa. 1979).

The existence of a lease agreement deeming a truck driver either specifically an employee of a particular entity or at least subject to the control of a specific entity is a factor to be considered by the courts in determining employment status, but is not by itself dispositive on the issue. *See Red Line Express Co., Inc. v. Workmen's Comp. Appeal Bd. (Price)*, 588 A.2d 90, 95 (Commw. Ct. Pa. 1991). *See also Genie Trucking Line, Inc. v. Am. Home Assur. Co.*, 524 A.2d 966, 968 (Pa. Super. Ct. 1987) ("[T]he terms of the lease are but one factor to be considered, and each case must be decided on its own facts."); *Patterson v. Workmen's Comp. Appeal Bd. (Wayne W. Sell Corp.)*, 485 A.2d 886, 889 (Commw. Ct. Pa. 1985) (Although lease terms provided for

exclusive possession, control, and use by the carrier lessee, "the facts are that control was not transferred."); *N. E. Express, Inc. v. Workmen's Comp. Appeal Bd. (Woytas),* 465 A.2d 724, 726 (Commw. Ct. Pa. 1983) (upholding determination of an employer-employee relationship partially due to the terms of a lease agreement where lessor also inspected vehicle, tested all drivers, paid bonuses to driver, provided medical insurance, and owned trailers in question, all of which bore the name of the lessor, and restricted driver's ability to contract with other shipper on return trips); *Daily Express,* 406 A.2d at 602 ("[T]he terms of the lease cannot be read so as to countermand the actual factual situation.").

Guided by the above, the Court finds that Pennsylvania law does not recognize the existence of an employer-employee relationship based solely on the terms of a lease agreement. This precedent is the case even where the driver of a truck is a party to the terms of the lease agreement. Thus, the degree of separation between Balanescu and the parties to the lease agreement only further reinforces the need for consideration of other factors before finding the existence of an employment relationship.

B.   MATERIAL FACTUAL DISPUTES EXIST ON THE CONTROL OVER ANDREI BALANESCU EXHIBITED BY NEWBURG EGG

At oral argument, counsel for Knecht argued that should the lease prove inadequate to establish Balanescu's employment with Newburg Egg, that at the very least a dispute of material fact existed in terms of the control exercised over Balanescu by Newburg and thus Balanescu's status as an employee should be presented to the jury. While the extent of control indeed may be considered a material fact and by Defendants' own assertion is a question for the jury to resolve, Balanescu's status as an employee of Newburg is a question of law, not fact, which must be first evaluated by the Court.

"Whether an employer-employee relationship exists is a question of law to be decided on the specific facts of each case." *3d Trucking Co., Inc. v. W.C.A.B. (Fine and Anthony Holdings Int'l.)*, 921 A.2d 1281, 1288 (Commw. Ct. Pa. 2007) (citing *Universal Am-Can, Ltd. v. Workers' Comp. Appeal Bd. (Minteer)*, 762 A.2d 328 (2000); *Red Line Express Co. Inc. v. Workmen's Comp. Appeal. Bd. (Prince)*, 588 A.2d 90 (1991)). Where the facts are not in dispute, and the evidence leaves no sufficient ground for inconsistent inferences therefrom, the question as to who is the servant's employer is a matter for the determination of the court, but, where the evidence presents an issue of fact, or different inferences can reasonably be drawn therefrom, the question is one for determination by the jury. *Mature v. Angelo*, 97 A.2d 59, 61 (Pa. 1953) (citations omitted).

In considering whether someone is an employee or an independent contractor, Pennsylvania courts consider many factors including:

> (1) control of manner the work is done; (2) responsibility for result only; (3) terms of agreement between the parties; (4) nature of the work/occupation; (5) skill required for performance; (6) whether one is engaged in a distinct occupation or business; (7) which party supplies the tools/equipment; (8) whether payment is by time or by the job; (9) whether work is part of the regular business of employer; and, (10) the right to terminate employment.

*Baum v. Workers' Comp. Appeal Bd. (Hitchcock),* 721 A.2d 402,405 (Commw. Ct. Pa. 1998) (citing *Hammermill Paper v. Rust Eng'g Co.,* 243 A.2d 389, 392 (1968)

No one factor is dispositive and not all factors need be met to determine the type of relationship that exists. *See Baum*, 721 A.2d at 405 (citing *J. Miller Co. v. Mixter*, 277 A.2d 867 (Commw. Ct. Pa. 1971)). The "key factors" to be considered are "(1) whether the purported employer has the right to hire and fire the employee; (2) whether the employer has the right to direct the manner of the employee's performance of the work; and (3) whether the employer has the right to control the work to be completed." *Baum*, 721 A.2d at 405 (citing

- 8 -

*Comp. Appeal Bd. (Jack Greenberg Co.)*, 706 A.2d 403 (Commw. Ct. Pa. 1998); *N. Penn Transfer, Inc. v. Workmen's Comp. Appeal Bd. (Michalovicz)*, 434 A.2d 228 (Commw. Ct. Pa. 1981)). *See also 3D Trucking*, 921 A.2d at 1288 ("An employer-employee relationship exists where the alleged employer possesses the right to select the employee; the right and power to discharge the employee; the power to direct manner of performance; and the power to control the employee.") (citations omitted).

      While the majority of Knecht's brief focuses on the language of the lease agreement with JILCO, Knecht also asserts that Newburg exercised control over Balanescu in a manner consistent with an employer-employee relationship. Citing the deposition testimony of Moses Goldstein, President of Newburg Egg, Knecht asserts Newburg demonstrated an employment relationship by: being the shipper for the route, being the dispatcher for the shipment, providing the route, providing the customer information, and directing where the product was to be shipped. (Doc. 56, at 5).[2] Newburg contends that the conduct in question is "customary of a shipper within the transportation industry" and insufficient to establish an employment relationship. As noted above, the key considerations guiding this Court's determination are whether the purported employer has the right to hire and fire the employee, whether the employer has the right to direct the manner of the employee's performance of the work, and whether the employer has the right to control the work to be completed. Specifically to the facts of this case, these considerations become whether Newburg has the right to hire and fire

---

[2] The deposition transcript supporting this contention is attached as Exhibit C to the motion. (Doc. 56-3).

Balanescu, whether Newburg has the right to direct the manner of Balanescu's performance of the work, and whether Newburg has the right to control the work to be completed.

Review of these key factors shows that material facts remain in dispute and prevent a finding on Balanescu's employment status as a matter of law. On the first of these factors, Knecht has not produced any evidence, nor argued in passing, that Newburg had any right to hire or fire Balanescu. The Court is unaware of any assertion that Newburg could dictate the particular driver to be provided by Izzy Trucking for deliveries, let alone hire or fire any driver.

It is consideration on the manner and control aspects of the relationship that gives the Court pause. On these issues, Knecht asserts that Newburg retained the right to control Balanescu by dictating the route to be taken in delivering the cargo. While control is typically narrowly construed, Pennsylvania courts have given significant weight to a shipper dictating the route to be taken in evaluating the existence of an employment relationship. "[T]he right to instruct a driver as to the route to take indicates the presence of the right to control the manner of performing the driver's work." *Lego v. Workmen's Comp. Appeal Bd.*, 445 A.2d 1324, 1327 (Commw. Ct. Pa. 1982). Directing a driver on specific routes to take has been identified as potentially creating an employer-employee relationship, as opposed to merely instructing a driver where to pick up a load and deliver it. *See Red Line Express Co., Inc. v. Workmen's Comp. Appeal Bd. (Price)*, 588 A.2d 90, 96 (Commw. Ct. Pa. 1991). Knecht points to the deposition testimony of Newburg President Moses Goldstein, who stated that it provided the route to be taken. (Doc. 56-3). While it's unclear if Balanescu retained the discretion to deviate from this route, the provision of the route initially creates some presumption of control over the manner in which Balanescu would conduct performance of his duties.

In addition to the key factors cited, the Court also considers other relevant circumstances as enumerated in *Baum*. Weighing in favor of Balanescu being an employee are the terms of the lease agreement between Newburg and JILCO, Newburg's providing of tools/equipment for the delivery, and Balanescu's payment by the job as opposed to payment for time (though the fact that payments flowed from Newburg to Izzy Trucking and then Balanescu clouds this factor). Weighing in favor of Balanescu being considered an independent contractor are the lack of an identified agreement between Newburg and Izzy Trucking or Balanescu labelling him as an employee, the nature of the work/occupation, the skill required for performance, the engagement in a distinct occupation or business.

Accordingly, it is apparent that factual disputes remain that at this time prevent the Court from finding the existence or lack thereof of an employment relationship between Newburg Egg and Andrei Balanescu at the time of the accident. Thus, the issue of control, and thus an employment relationship, remains a question to be posited to the jury at trial. Accordingly, Plaintiff's motion for summary judgment (Doc. 53) is **DENIED**.

### C. ANDREI BALANESCU'S EMPLOYMENT REMAINS A DISPUTE OF MATERIAL FACT PREVENTING SUMMARY JUDGMENT

Balanescu's employment status also affects a majority of the motion for summary judgment filed by Newburg Egg. (Doc. 57). Newburg Egg moves for summary judgment on five claims, asserting that Knecht has not produced evidence to establish: the existence of a joint venture between Newburg and Izzy Trucking; vicarious liability as a result of the accident; negligent hiring, supervision, or retention of Balanescu as an employee; negligent entrustment of the trailer to Balanescu; or recklessness on the part of Newburg Egg. (Doc. 58). Knecht responds that genuine disputes of material fact remain on each of these claims. (Doc. 77).

Upon review of the respective briefs, it appears that the parties are in agreement that employment and control are paramount to evaluating claims of vicarious liability (Doc. 58, at 8-9; Doc. 77, at 10-11) and negligent hiring, supervision, or retention (Doc. 77, at 23-24). As Balanescu's relationship with Newburg Egg remains in dispute, as demonstrated by the foregoing rationale, the Court is unable to resolve either claim at this juncture. Accordingly, the Court only addresses the motion's assertions on the non-existence of a joint venture, negligent entrustment, and recklessness warranting punitive damages.

### 1. Joint Venture

Newburg argues that Knecht has not produced evidence to support the contention that they engaged in a joint venture with Izzy Trucking. (Doc. 58, at 5). Knecht refutes this argument, pointing to the exclusivity between Newburg Egg and Izzy Trucking, and asserting a mutual endeavor between the parties. (Doc. 77, at 5-8). Of note, the parties raise differing, though not entirely distinct, theories on what constitutes a joint venture under Pennsylvania law.

Newburg provides a definition called the "Joint Enterprise Rule" from the *Corpus Juris Secundum*, Negligence § 153. Under this offered definition, courts find "a legal relationship between two or more parties that imposes the responsibility upon each joint adventurer for the negligent acts of the other while acting in furtherance of their common undertaking." Newburg then states that "[f]our base elements are required to establish a joint enterprise for the purposes of negligence liability: (1) An agreement among members of the group; (2) A common purpose; (3) A community of pecuniary interest; and (4) An equal right to control the enterprise." (Doc. 58, at 5-6). Knecht meanwhile, citing *McRoberts v. Phelps*, 138 A.2d 439, 443-44 (Pa. 1958), states that Pennsylvania courts will find a joint venture upon demonstration that:

(1) each party to the venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a joint proprietary interest and right of mutual control over the subject matter of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction.

(Doc. 77, at 6).

The Third Circuit considers a joint venture a legal entity in the nature of a partnership. *See Dorsey Trailers, Inc. v. N.L.R.B.*, 134 F.3d 125, 130 (3d Cir. 1998) (citing *Ringier Am., Inc. v. Land O'Lakes, Inc.*, 106 F.3d 825, 828 (8th Cir. 1997)). It engages in the joint undertaking of a particular transaction for mutual profit, mutual control, mutual contribution and is memorialized in contract. *Dorsey Trailers*, 134 F.3d at 130 (citing *Ringier*, 106 F.3d at 828; *Schiavone Const. Co. v. City of New York*, 99 F.3d 546, 548-49 (2d Cir. 1996)).

This contract need not be in writing. "The *sine qua non* of a joint venture is a contract, express or implied; that is, an actual *agreement* between the parties." *U.S. v. USX Corp.*, 68 F.3d 811, 826 (3d Cir. 1995) (quoting *Hellenic Lines, Ltd. v. Commodities Bagging & Shipping, Process Supply Co.*, 611 F.Supp. 665, 679 (D.N.J. 1985) (alterations in original). The agreement to create a joint venture may be implied based on the conduct of the parties. *USX Corp.*, 68 F.3d at 826 (citing *Wanaque Borough Sewerage Auth. v. Twp. Of West Milford*, 656 A.2d 448, 453 (Super. Ct. N.J. 1995). The Court in *USX Corp*. stated the other requisite elements of a joint venture are:

(1) The contribution by each party of money, property, effort, knowledge or some other asset to a common undertaking; (2) The existence of a joint property interest in the subject matter of the venture; (3) The right of mutual control or management of the venture; and (4) An agreement to share the profits or losses of the venture."

*USX Corp.*, 68 F.3d at 826-27 (citing *Inter-City Tire and Auto Center, Inc. v. Uniroyal, Inc.* 701 F.Supp. 1120, 1126 (D.N.J. 1988), *aff'd mem. sub nom. Uniroyal, Inc. v. Erbesh*, 888 F.2d 1382 (3d Cir. 1989) (table).

The Court further noted that the existence of a dispute on any of these elements will preclude summary judgment. *USX Corp.*, 68 F.3d at 827.

Review of the briefs on this issue demonstrates that disputes remain on each of these issues. Newburg Egg argues that there is no evidence to support the contention that they had any control over "the means and methods of transporting the cargo entrusted to Izzy." (Doc. 58, at 7). Further, they argue that there is no evidence of shared pecuniary interest, as the entirety of any arrangement was Izzy being paid to transport cargo; who did not benefit from profits of Newburg's agreements with customers. (Doc. 58, at 7). Knecht counters that deposition testimony from Newburg Egg's President references control over the equipment and routes, as well as the cargo and destination. (Doc. 77, at 8). Further, Israel Newman, owner of Izzy Trucking, testified that he worked exclusively for Newburg Egg. (Doc. 77, at 8). Additionally, Newburg entered into leasing agreements on behalf of Izzy Trucking due to the former's bad credit. (Doc. 77, at 8-9).

Thus, genuine disputes of material fact remain that prevent the entry of summary judgment on the issue of a joint venture at this juncture.

### 2. Negligent Entrustment and Recklessness

In Count XVI of the amended complaint, Knecht asserts a claim against Newburg Egg for the negligent entrustment of equipment to Izzy Trucking,[3] arguing that Newburg made no effort to investigate the hiring practices of Izzy Trucking to ensure that their drivers were safe

---

[3] While the claim states Izzy Trucking and/or A&B Trucking, as discussed later Knecht has not opposed the dismissal of claims against A&B Trucking. Thus, the Court only considers the claim as it relates to Izzy Trucking.

before using Izzy to transport its product. Newburg argues that it cannot be liable for negligent entrustment, as it did not control any of the equipment involved in the accident, could not have permitted its use, and that there is no evidence that the trailer was improperly or intentionally used to cause harm. (Doc. 58, at 20-21).

The parties agree that the relevant law governing the claim of negligent entrustment comes from the Restatement (Second) of Torts. Per the Restatement:

> [i]t is negligence to permit a third person to use a thing or to engage in an activity which is under the control of the actor, if the actor knows or should know that such person intends or is likely to use the thing or to conduct himself in the activity in such a manner as to create an unreasonable risk of harm to others.

Restatement (Second) of Torts § 308 (1965).

As summarized by Newburg Egg, Knecht must show that Newburg Egg (1) permitted a third person, (2) to use a thing under the control of Newburg Egg, and (3) that the Newburg Egg knew or should have known that the third person intended to or was likely to use the thing in such a way that would harm another. (Doc. 58, at 17) (citing *Ferry v. Fisher*, 709 A.2d 399, 403 (Pa. Super. Ct. 1998)).

As has been a theme in this Memorandum, disputes remain on the extent of control exhibited by Newburg Egg. Newburg argues that Izzy Trucking in fact had exclusive control over the trailer involved in the accident, with testimony from both Newburg and Israel Newman that Izzy leased the trailers from JILCO, kept trucks and trailers at Newburg's facility without specific agreement from Newburg, and provided all insurance for the trailer. (Doc. 58, at 20; Doc. 57, at 200). Countering this contention are the facts that the trailer was leased specifically to Newburg Egg by JILCO without any evidence of a sublease and that the trailer was stored at Newburg Egg's facility. (Doc. 77, at 32).

Even if the issue of control was not still in dispute, it remains questionable whether Newburg "knew or should have known that the third person intended to or was likely to use the thing in such a way that would harm another." At oral argument, Knecht articulated that Newburg undertook no effort to investigate or require provision of driver safety records for Izzy Trucking drivers. Knecht states that had Newburg done so, they would have discovered that Balanescu had his CDL suspended on multiple occasions and had other moving violations in addition to the suspendable offenses. Further, they would have come to understand lax hiring procedures employed by Izzy Trucking that do not comport with federal standards.

Knecht's brief in opposition proffers the contention that the fact that Newburg did nothing to vet Izzy Trucking's hiring practices and drivers is evidence enough to warrant summary judgment. However, Newburg's actions in retaining Izzy Trucking after the referral from C.H. Robinson, and thus what Newburg knew or should have known on how the trailer would be used is a question best resolved by the fact-finder in this case, the jury. Coupled with lingering disputes on who controlled the trailer, summary judgment on the issue of negligent entrustment is inappropriate at this time.

### 3. Recklessness and Punitive Damages

Likewise, whether the conduct in question rises beyond mere negligence and to a level of recklessness warranting punitive damages is also a question to be resolved by the jury. As summarized in *Gfoehrer v. Calice*:

> [t]he standard governing the award of punitive damages in Pennsylvania is settled. "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others." *Feld v. Merriam,* 485 A.2d 742, 747 (1984) (quoting Restatement (Second) of Torts § 908(2) (1979)); *see also Chambers v. Montgomery,* 192 A.2d 355, 358 (1963). As the name suggests, punitive damages are penal in nature and are proper only in cases where the defendant's actions are so outrageous as to

demonstrate willful, wanton or reckless conduct. *See SHV Coal, Inc. v. Continental Grain Co.,* 587 A.2d 702, 704 (1991); *Feld,* 485 A.2d at 747–48; *Chambers,* 192 A.2d at 358. *See also* Restatement (Second) of Torts § 908, comment b. The purpose of punitive damages is to punish a tortfeasor for outrageous conduct and to deter him or others like him from similar conduct. *Kirkbride v. Lisbon Contractors, Inc.,* 555 A.2d 800, 803 (1989); Restatement (Second) of Torts § 908(1) ("Punitive damages are damages, other than compensatory or nominal damages, awarded against a person to punish him for his outrageous conduct and to deter him and others like him from similar conduct in the future."). Additionally, this Court has stressed that, when assessing the propriety of the imposition of punitive damages, "[t]he state of mind of the actor is vital. The act, or the failure to act, must be intentional, reckless or malicious." *See Feld,* 485 A.2d at 748; *see also Martin v. Johns–Manville Corp.,* 494 A.2d 1088, 1097 n. 12 (1985) (plurality opinion).

*Gfoehrer v. Calice*, No. 3:09-CV-2111, 2011 WL 5320712, at *2 (M.D. Pa. Nov. 1, 2011).

The standard for culpability resulting in punitive damages for recklessness is higher than mere negligence, though the underlying facts forming a basis for both theories may be one in the same. *See Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 772 (Pa. 2005). As relating to Newburg Egg, Knecht's claim for punitive damages is based on vicarious liability for the conduct of Izzy Trucking and Andrei Balanescu.

"Punitive damages may be awarded on the basis of vicarious liability." *Lucchesi v. Johnson*, No. 15-6114, 2015 WL 9308334, at *4 (E.D. Pa. Dec. 22, 2015) (quoting *Shiner v. Moriarty*, 706 A.2d 1228, 1240 (Pa. Super. Ct. 1998)). *See Burke v. TransAm Trucking, Inc.*, 605 F.Supp.2d 647, 657 (M.D. Pa. 2009); *Arias v. Decker Transp.*, No. 3:06-CV-638, 2008 WL 450435, at *4 (M.D. Pa. Feb. 14, 2008). Further, "Pennsylvania law does not require 'an agent to commit a tortious act at the direction of the principal, nor must the principal ratify the act, in order for punitive damages to be imposed on him. *Lucchesi*, 2015 WL 9308334, at *4 (quoting *Shiner*, 706 A.2d at 1240). "However, the imposition of punitive damages on an employer requires that the employee's actions are clearly outrageous, occur within the scope of his

employment, and are not [sic] done to satisfy a personal motive, but to further the employer's interests." *Arias*, 2008 WL 450435, at *4 (citing *Delahanty v. First Penn. Bank, N.A.*, 464 A.2d 1243, 1264-65 (Pa. Super. Ct. 1983)).

Thus, the relevant inquiry is not whether Newburg acted intentionally, recklessly, or maliciously, but whether Balanescu (or Izzy Trucking) did. Of course, such conduct only attaches to Newburg Egg upon a determination that either is an agent or employee of Newburg. Both the recklessness of Balanescu and the employment relationship with Newburg remain questions to be resolved by a jury. Thus, summary judgment on the issue of punitive damages is inappropriate.

In summation, Newburg Egg's motion for summary judgment is **DENIED**.[4] The existence of an employee-employer relationship between Andrei Balanescu and Newburg Egg remains in dispute due to disagreement on the extent of control available to Newburg Egg. Thus, claims of vicarious liability, negligent hiring, and for punitive damages remain unresolvable at this time. Further, material disputes prevent summary judgment on the existence or non-existence of a joint venture, as well as on the negligent entrustment of the trailer involved in the accident.

---

[4] As resolution of claims for negligent hiring of Balanescu by Newburg Egg cannot be done at this time, Plaintiff's motion on the same (Doc. 62) is likewise **DENIED**.

D. WHILE NEGLIGENT ENTRUSTMENT FITS UNDER THE GRAVES AMENDMENT'S SAVINGS CLAUSE, JILCO DID NOT HAVE A DUTY TO INDEPENDENTLY INVESTIGATE DRIVER RECORDS

Like Newburg Egg, Defendant JILCO Equipment Leasing Co., Inc. moves for summary judgment on Knecht's claims that JILCO negligently entrusted the trailer to Izzy Trucking and for punitive damages resulting from the conduct. (Doc. 59; Doc. 60).

Pennsylvania courts have found that "[a] lessor may be held liable . . . for the lessor's own acts of negligence in leasing the vehicle for use by a person whom the lessor has reason to know is incompetent." *Roebuck v. Bensing,* No. 97-CV-5285, 97-CV-7244, 1999 WL 124462, at *7 (E.D. Pa. Feb. 8, 1999) (quoting *Jahn v. O'Neill*, 475 A.2d 837, 838 (Pa. Super. Ct. 1984) (alterations in original)). However, JILCO argues that this state law is preempted by the subsequently enacted Graves Amendment. Under this statute:

> (a) An owner of a motor vehicle that rents or leases the vehicle to a person (or an affiliate of the owner) shall not be liable under the law of any State or political subdivision thereof, by reason of being the owner of the vehicle (or an affiliate of the owner), for harm to persons or property that results or arises out of the use, operation, or possession of the vehicle during the period of the rental or lease, if-
>
> (1) the owner (or an affiliate of the owner) is engaged in the trade or business of renting or leasing motor vehicles; and
>
> (2) there is no negligence or criminal wrongdoing on the part of the owner (or an affiliate of the owner).

49 U.S.C. § 30106.

Trailers are considered motor vehicles under Title 49. *See* 49 U.S.C. § 30102(a)(7) (A motor vehicle "means a vehicle driven or drawn by mechanical power and manufactured primarily for use on public streets, roads, and highways, but does not include a vehicle operated only on a rail line."); *Burgos v. JBS Carriers, Inc.*, No. 3:15-1415, 2016 WL 4591660, at *2 (M.D. Tenn.

Sep. 2, 2016). Neither party argues that JILCO is not engaged in the trade or business or renting or leasing motor vehicles, and only the availability of relief due to negligence[5] is discussed.

Pennsylvania interpretations of the Graves Amendment are scarce, as is any federal appellate consideration of application of the Amendment's savings clause to a claim of negligent entrustment. *See Shropshire v. Shaneyfelt*, No. 12-CV-1657, at *4 (W.D. Pa. July 12, 2013). The case most directly addressing this issue by a Federal Court of Appeals appears to be *Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451 (8th Cir. 2010). In *Carton*, the Court of Appeals for the Eighth Circuit agreed with an appellant's contention that the district court improperly dismissed claims of negligent entrustment by reason of the Graves Amendment. Citing heavily to *Dubose v. Transp. Enter. Leasing, LLC*, No. 6:08-CV-385-Orl-31DAB, 2009 WL 210724 (M.D. Fla. Jan. 27, 2009), the District Court had concluded that the savings clause of the Graves Amendment only applied to instances of criminal wrongdoing and negligent maintenance by a lessor unless state law specifically imposed a separate legal duty on lessors to ensure lessees maintained adequate insurance or possessed adequate driving records. *See Carton*, 611 F.3d at 457. Applying principles of statutory construction, the Court of Appeals determined the District Court's interpretation was too narrow, as the language of the statute did not impose any such restriction. *Carton*, 611 F.3d at 458. Nonetheless, the Court determined that the conduct in question, a failure of the lessor to repossess a vehicle despite months of financial

---

[5] Referred to in various caselaw as the "savings clause." *See Carton v. Gen. Motor Acceptance Corp.*, 611 F.3d 451, 457 (8th Cir. 2010); *Dubose v. Transp. Enter. Leasing, LLC*, No. 6:08-CV-385-Orl-31DAB, 2009 WL 210724, at *3 (M.D. Fla. Jan. 27, 2009).

irresponsibility by the lessee, did not rise to the level of negligent entrustment in that it did not pose an unreasonable risk of physical harm to others. *Carton*, 611 F.3d at 458.

This Court agrees that the Graves Amendment cannot be read to exclude claims of negligent entrustment, when the facts giving rise to negligent acts of the lessor pose an unreasonable risk of harm to others. Namely, whether JILCO acted negligently in failing to vet Izzy Trucking prior to leasing equipment, knowing that doing so posed an unreasonable risk of harm to the Plaintiff. Even the *Dubose* Court opined that a state obligation to ensure that lessee's had adequate driving records would fall within the exception provided by the savings clause. *See Dubose*, 2009 WL 210724, at *4.

Pennsylvania courts have not found an authoritative duty to investigate driver records owed by a lessor, unless the lessor affirmative assumes responsibility from the lessee. Barring assumption, any duty to investigate the background of hired drivers remains with the lessee. To wit, in the aforementioned case of *Roebuck v. Bensing*, the District Court for the Eastern District of Pennsylvania granted summary judgment in favor of the lessor of a tractor-trailer, where the employee of the lessee was involved in an accident resulting in the death of a third-party. No. 97-CV-5285, 97-CV-7244, 1999 WL 124462 (E.D. Pa. Feb. 8, 1999). The Court reasoned that the lessor had no responsibility regarding the credentials of the lessee's drivers, per the terms of a lease agreement between the parties. *See Roebuck*, 1999 WL 124462, at *7. The specific lease provision read: "CUSTOMER agrees that all Vehicles shall be operated by safe, qualified, properly licensed drivers, who shall conclusively be presumed to be CUSTOMER's agent, servant or employee only, and subject to its exclusive direction and control." *Roebuck*, 1999 WL 124462, at *7. Additionally, the Court was unpersuaded by the argument that the lessor failed

to review trip records that may have shown drivers were exceeding the maximum driving hours allowable. *Roebuck*, 1999 WL 124462, at *7.

The lease provision between JILCO and Newburg Egg[6] contains similar language to the lease in *Roebuck*. Under ¶ 14 of the lease, "LESSEE agrees that the Vehicle(s) shall be operated by safe, careful, and licensed drivers to be selected, employed, controlled, and paid by LESSEE." (Doc. 56-1, at 4). The lease continues that Newburg shall require drivers to exercise reasonable care and diligence. (Doc. 56-1, at 4). It contains no mention of JILCO oversight and responsibility as to driver credentials. The clause does provide that JILCO may advise Newburg of any "reckless, careless, or abusive handling of such Vehicle(s)," but not that JILCO could dictate any corrective or disciplinary action as a result. (Doc. 56-1, at 4). The lease term is nearly indistinguishable from the one in *Roebuck*, and contains no assumption of driver history investigation attributable to JILCO. Even where lessors have retained some modicum of investigative rights, courts have not construed the retention as usurping the responsibility imposed on the employer. *See Jerman v. Ins. Co. of N.Y.*, No. 05-CV-5968, 2007 WL 2702816, *3 (E.D. Pa. Sep. 12, 2007).

JILCO did not have an affirmative duty to independently investigate driver backgrounds prior or subsequently to entering into the lease agreement. Thus, while negligent entrustment fits under the savings clause of the Graves Amendment, the credentials and safety of the employees of the lessee were the responsibility of the lessee, not JILCO Equipment Leasing

---

[6] While the amended complaint argues JILCO negligently entrusted the trailer to Izzy Trucking, the only agreement in the record is between JILCO and Newburg Egg.

Co., Inc. The terms of the lease dictate that the lessee was to provide safe drivers and contains no provision that JILCO could make driver safety determinations. Pennsylvania precedent does not impose the duty to investigate driver safety records upon a lessor barring clear assumption of such liability. Accordingly, Defendant JILCO Equipment Leasing Co., Inc.'s motion for summary judgment is **GRANTED**.

E. S<small>UMMARY JUDGMENT ON</small> K<small>NECHT'S CLAIM OF NEGLIGENT HIRING BY</small> I<small>ZZY</small> T<small>RUCKING MUST BE DENIED, AS GENUINE DISPUTES OF MATERIAL FACT REMAIN ON THE CAUSATION ELEMENT REQUIRED TO ESTABLISH</small> <small>NEGLIGENCE.</small>

In addition to a claim for negligent hiring by Newburg Egg, Knecht moves for summary judgment for the negligent hiring of Balanescu by Izzy Trucking. (Doc. 65; Doc. 67). Knecht argues that Izzy Trucking disregarded the motor carrier safety regulations entirely in its hiring of Balanescu, and is therefore liable for the resulting harm from the accident. (Doc. 67). Izzy Trucking responds that Knecht's dual claims for negligent hiring establish the existence of a factual dispute. (Doc. 74). Further, they argue that a violation of the Regulations does not impute liability where causation remains at issue. (Doc. 74). At oral argument, Knecht clarified its employment theory as Balanescu being a statutory employee of Izzy Trucking under the Regulations and a common law employee of Newburg Egg based on the control exhibited by Newburg.

Under the Restatement (Second) of Agency:

A person conducting an activity through servants or other agents is subject to liability for harm resulting from his conduct if he is negligent or reckless:

(a) in giving improper or ambiguous orders of in failing to make proper regulations; or

(b) in the employment of improper persons or instrumentalities in work involving risk of harm to others;

(c) in the supervision of the activity; or

(d) in permitting, or failing to prevent, negligent or other tortious conduct by persons, whether or not his servants or agents, upon premises or with instrumentalities under his control.

Restatement (Second) of Agency § 213 (1958). *See Brezenski v. World Truck Transfer, Inc.*, 755 A.2d 36, 42 (Pa. Super. Ct. 2000).

In addition to the responsibilities imposed by Pennsylvania's adoption of the Restatement, federal regulations provide clear requirements specifically on motor carriers such as Izzy Trucking. Among the provisions cited by Knecht that Izzy Trucking allegedly failed to follow are 49 CFR §§ 391.11[7] and 391.21 which mandate that a motor carrier must verify the

---

[7] Sec. 391.11(b) provides that:

a person is qualified to drive a motor vehicle if he/she-
(1) Is at least 21 years old;
(2) Can read and speak the English language sufficiently to converse with the general public, to understand highway traffic signs and signals in the English language, to respond to official inquiries, and to make entries on reports and records;
(3) Can, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives;
(4) Is physically qualified to drive a commercial motor vehicle in accordance with subpart E—Physical Qualifications and Examinations of this part;
(5) Has a currently valid commercial motor vehicle operator's license issued only by one State or jurisdiction;
(6) Has prepared and furnished the motor carrier that employs him/her with the list of violations or the certificate as required by § 391.27;
(7) Is not disqualified to drive a commercial motor vehicle under the rules in § 391.15; and
(8) Has successfully completed a driver's road test and has been issued a certificate of driver's road test in accordance with § 391.31, or has presented an operator's license or a certificate of road test which the motor carrier that employs him/her has accepted as equivalent to a road test in accordance with § 391.33.

*(footnote continued on next page)*

qualifications of potential drivers and that potential drivers must furnish applications for employment providing a set list of information. Knecht argues that Izzy Trucking's principal, Israel Newman, testified at his deposition that he did not require Balanescu to fill out an employment application,[8] or verify that the qualifications enumerated in § 391.11 were met.

---

[8] An application for employment must contain:

(1) The name and address of the employing motor carrier;
(2) The applicant's name, address, date of birth, and social security number;
(3) The addresses at which the applicant has resided during the 3 years preceding the date on which the application is submitted;
(4) The date on which the application is submitted;
(5) The issuing State, number, and expiration date of each unexpired commercial motor vehicle operator's license or permit that has been issued to the applicant;
(6) The nature and extent of the applicant's experience in the operation of motor vehicles, including the type of equipment (such as buses, trucks, truck tractors, semitrailers, full trailers, and pole trailers) which he/she has operated;
(7) A list of all motor vehicle accidents in which the applicant was involved during the 3 years preceding the date the application is submitted, specifying the date and nature of each accident and any fatalities or personal injuries it caused;
(8) A list of all violations of motor vehicle laws or ordinances (other than violations involving only parking) of which the applicant was convicted or forfeited bond or collateral during the 3 years preceding the date the application is submitted;
(9) A statement setting forth in detail the facts and circumstances of any denial, revocation, or suspension of any license, permit, or privilege to operate a motor vehicle that has been issued to the applicant, or a statement that no such denial, revocation, or suspension has occurred;
(10)(i) A list of the names and addresses of the applicant's employers during the 3 years preceding the date the application is submitted,
(ii) The dates he or she was employed by that employer,
(iii) The reason for leaving the employ of that employer,
(iv) After October 29, 2004, whether the
(A) Applicant was subject to the FMCSRs while employed by that previous employer,

*(footnote continued on next page)*

Izzy Trucking does not argue that it met the requirements of these Regulations—except to point out that Balanescu had a valid and active CDL license and the time of his hiring—but that violation of these Regulations does not by itself establish liability. (Doc. 74, at 8-9).

Liability under the Restatement (Second) of Agency § 213 also requires that "all the requirements of an action of tort for negligence exist." Restatement (Second) of Agency § 213, cmt. a (1958). These requirements of course are that "the plaintiff must demonstrate that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff and the plaintiff suffered an actual loss or damage." Brezenski, 755 A.2d at 40 (citing Martin v. Evans, 711 A.2d 458 (Pa. 1998)).

Without passing judgment on the existence of a duty, it is by no means conclusively established that Andrei Balanescu acted in a deficient manner causing Plaintiff's injuries. Thus, the Court cannot conclusively state that any negligence in hiring practices exhibited by Izzy

---

(B) Job was designated as a safety sensitive function in any DOT regulated mode subject to alcohol and controlled substances testing requirements as required by 49 CFR part 40;

(11) For those drivers applying to operate a commercial motor vehicle as defined by part 383 of this subchapter, a list of the names and addresses of the applicant's employers during the 7–year period preceding the 3 years contained in paragraph (b)(10) of this section for which the applicant was an operator of a commercial motor vehicle, together with the dates of employment and the reasons for leaving such employment; and

(12) The following certification and signature line, which must appear at the end of the application form and be signed by the applicant:

This certifies that this application was completed by me, and that all entries on it and information in it are true and complete to the best of my knowledge.

49 CFR § 391.21(b).

Trucking is sufficient to affix liability for the accident in question at the summary judgment stage; as causation is integral to any negligence analysis and remains at issue. Given the rampant factual disputes remaining on what happened the night of October 28, 2015, the question of causation in this matter can only be determined by the fact-finder at trial. While Izzy Trucking may have indeed failed to adhere to federal regulations in hiring Balanescu, it is up to a jury to connect the negligent hiring of Andrei Balanescu to the injuries sustained by Matthew Knecht. Accordingly, Plaintiff's motion for summary judgment on the negligent hiring of Andrei Balanescu by Izzy Trucking is **DENIED**.

F. <u>Knecht has not presented evidence of an employer-employee relationship between Newburg Egg and Israel Newman to warrant judgment</u>

Lastly, Knecht moves for summary judgment on the assertion that Israel Newman, owner of Izzy Trucking, is also a Newburg Egg employee. (Doc. 68; Doc. 70). In support, Knecht argues that Newman testified at his deposition that he receives a paycheck from Newburg Egg and that Newburg paid Newman's bills that resulted from the deliveries. (Doc 70, at 4-5). Newburg Egg responds that these payments were not a paycheck, but normal payments a shipper makes to a carrier to transport goods, and that payment of bills was done in lieu of a portion of the full payment for transportation. (Doc. 72). In any case, they argue, the existence of an employment relationship is inherently fact specific and not established by the conduct cited by Knecht. (Doc. 72).

The standards governing the existence of an employer-employee relationship are articulated at length above. Every case is fact-specific and control is paramount. *See 3D Trucking Co., Inc. v. Workmen's Comp. Appeal Bd. (Fine and Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Commw. Ct. Pa. 2007). No one factor is determinative. An employer's payment of wages and

payroll deductions are significant factors in determining whether an employer-employee relationship exists. *3D Trucking*, 921 A.2d at 1288 (citing *Red Line Exp.Co., Inc. v. Workmen's Comp. Appeal Bd.*, 588 A.2d 90, 94 (Commw. Ct. Pa. 1991)). So if the checks received by Israel Newman from Newburg Egg were indeed paychecks, this would be a significant factor in establishing an employment relationship. However, Newburg points out that the nature of the trucking industry requires a shipper to pay a carrier for transportation. Newman, as owner of Izzy Trucking, would have received checks from Newburg. The characterization of the checks is important and not has not yet conclusively established an employment relationship, especially given the legal constructs in the business world.

The mere facts that Newman received checks from Newburg Egg and Newburg covered some of Newman's costs do not warrant the entry of summary judgment. The nature of both remain in dispute. Accordingly, Plaintiff's motion for summary judgment on the question of Israel Newman's employment is **DENIED.**

IV. **SUMMARY**

For the foregoing reasons, Plaintiff's motions for summary judgment against Newburg Egg due to an employment relationship with Andrei Balanescu (Doc. 53) and for negligent hiring/supervision/retention of Balanescu (Doc. 62) are **DENIED**, as genuine disputes of material fact remain on the existence of an employment relationship between the two. Plaintiff's motion for summary judgment against Izzy Trucking for the negligent hiring/supervision/retention of Balanescu (Doc. 65) is also **DENIED**, as Plaintiff has not conclusively established that any negligent acts on the part of Izzy Trucking were the proximate cause of Plaintiff's injuries. Plaintiff's motion for summary judgment on the question of Israel Newman's employment (Doc. 68) is also **DENIED**, as the facts giving rise to the existence of

an employment relationship remains in dispute. Defendant Newburg Egg's motion for summary judgment (Doc. 57) is also **DENIED**, as questions on Newburg's control over Balanescu and the trailer involved in the accident remain, as well as disputes over the facts for establishing a joint venture and negligence on the part of Newburg Egg. Lastly, Defendant JILCO Equipment Leasing Co., Inc.'s motion for summary judgment (Doc. 59) is **GRANTED**, as there is no evidence that JILCO acted negligently as it had no duty to conduct independent investigations on the qualifications of third-party drivers.

An appropriate Order follows.

Dated: October 13, 2017

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK**
**United States Magistrate Judge**